FILED
United States Court of Appeals
Tenth Circuit

# UNITED STATES COURT OF APPEALS

## FOR THE TENTH CIRCUIT

February 26, 2019

Elisabeth A. Shumaker
Clerk of Court

_____

DAVID SPRADLEY,

     Plaintiff - Appellant,

v.

THE LEFLORE COUNTY DETENTION
CENTER PUBLIC TRUST BOARD; ED
DRURY, in his individual capacity,

     Defendants - Appellees.

No. 18-7028
(D.C. No. 6:15-CV-00340-JHP)
(E.D. Okla.)

_____

## ORDER AND JUDGMENT*
_____

Before **MATHESON**, **PHILLIPS**, and **EID**, Circuit Judges.**
_____

David Spradley was an inmate at the LeFlore County Detention Center

("LCDC") in 2014.  During his incarceration, he developed decubitus ulcers

(commonly known as "bedsores") that ultimately required surgery.  He sued LCDC

and Ed Drury, the nurse responsible for his medical care, under 42 U.S.C. § 1983.

_____

* This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel.  It may be cited, however, for its persuasive value consistent with Federal Rule of Appellate Procedure 32.1 and Tenth Circuit Rule 32.1.

** After examining the briefs and appellate record, this panel has determined unanimously to honor the parties' request for a decision on the briefs without oral argument.  *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G).  The case is therefore submitted without oral argument.

The complaint alleged that Mr. Drury violated his right under the Fourteenth Amendment to be free from cruel and unusual punishment.  The complaint alleged that Mr. Drury should have promptly hospitalized Mr. Spradley for the bedsores.  It further alleged LCDC was liable as a municipal entity because it had a policy or practice of providing inadequate treatment to inmates.  The district court granted summary judgment for the defendants, holding that Mr. Drury's treatment of Mr. Spradley, while possibly negligent, was not deliberately indifferent.  Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

## I.  BACKGROUND

### A.  *Factual Background*[1]

This section addresses (1) the causes and degrees of severity of decubitus ulcers, (2) Mr. Spradley's risk for them, (3) Mr. Spradley's booking at LCDC and the routine medical care he received, and (4) the exacerbation of Mr. Spradley's ulcers and his following hospitalization and surgery.

### 1.  Causes and Degrees of Decubitus Ulcers

Decubitus ulcers result when unrelieved pressure on the body damages underlying tissue.  They "appear[] in pressure areas of skin overlying a bony prominence in debilitated patients confined to a bed or otherwise immobilized."

---

[1] In reviewing the district court's grant of summary judgment, we present the facts in the light most favorable to the non-moving party—here, Mr. Spradley.  *Koch v. City of Del City*, 660 F.3d 1228, 1238 (10th Cir. 2011).

2

*Decubitus Ulcer*, Stedman's Medical Dictionary 2061 (28th ed. 2006). "Factors contributing to the formation of decubitus ulcers include poor nutrition, poor hydration, depression, pressure on bony prominences, incontinence, and friction and shearing forces against the skin." *Lawson v. Dallas County*, 112 F. Supp. 2d 616, 620 (N.D. Tex. 2000).

The characteristics of decubitus ulcers are:

- Stage I—"hot spots." Treatment requires only proper turning to alleviate pressure on the spot.

- Stage II—an actual break in the outer layers of the skin. The tissue will begin to rot and die. Treatment calls for wet-to-dry dressing changes.

- Stage III—necrotic, or dying, tissue. Treatment may require repositioning the patient, cleaning the wounds of fecal material, maintaining wet-to-dry dressings, using pressure reduction devices, and monitoring the ulcers' progression.

- Stage IV—full-thickness skin loss with extensive destruction of muscle, bone, and/or supporting structures. Surgery is required to close the wounds.

*Id.* at 620-21.

## 2. **Mr. Spradley's Risk for Decubitus Ulcers**

Mr. Spradley is paralyzed from the mid-chest down and confined to a wheelchair. He has mobility in his upper body and can drive an automobile, make telephone calls, use the toilet, bathe, shower, and dress himself. Mr. Spradley admits that even with good care, paraplegics like himself can develop bedsores.

3

3.  **Mr. Spradley's Care at the LaFlore County Detention Center**

On September 2, 2014, Mr. Spradley was arrested for violating the terms of a suspended sentence.  He was booked at LCDC and released on bond the next day. Mr. Spradley was rearrested on September 4.  To accommodate his paraplegia, the jail's administrator retrieved Mr. Spradley's gel mattress topper—designed to help prevent bedsores—and wheelchair and brought them to LCDC.

a.  *Initial booking and routine care*

During a routine medical screening on September 4, Mr. Drury, a licensed practical nurse and the head of medical staff at LCDC, noted a stage II ulcer on Mr. Spradley's right heel and evidence of a healing ulcer on his left heel.

LCDC contracted with nurse practitioner Tim Olive to provide additional medical services to inmates.  He was on call 24 hours a day, seven days a week.  Mr. Olive also examined Mr. Spradley during his booking and recommended that he be hospitalized.  Mr. Spradley refused hospitalization.  Mr. Olive directed Mr. Drury to apply dressings to Mr. Spradley's heel.  Mr. Drury had experience treating bedsores.

Mr. Spradley was hospitalized on September 6 for an evaluation of the ulcers on his feet.  No ulcers were present on his hips or buttocks at that time.  The hospital physician ordered that wet-to-dry dressings be applied to Mr. Spradley's heel and prescribed heel protectors, but Mr. Spradley refused to use them.

Mr. Drury changed Mr. Spradley's dressings and instructed jail employees on how to change the dressings when Mr. Drury was off-duty.  Mr. Drury also assisted

4

Mr. Spradley with his "bowel program"—that is, digitally removing Mr. Spradley's feces. Mr. Spradley testified that he did not receive help with the bowel program when Mr. Drury was away. Mr. Drury and other jail employees assisted Mr. Spradley with emptying and changing his Foley catheter.[2] Mr. Spradley claims he was repositioned only a few times in the two weeks he spent at the jail.

b. *Worsening of Mr. Spradley's decubitus ulcers*

The parties dispute when ulcers developed on Mr. Spradley's hip and buttocks. Their arguments rest on two conflicting sets of notes Mr. Drury prepared. Each set of notes reveals a different timeline of the ulcers' development.

i. <u>The handwritten notes—Mr. Drury's version of events</u>

Mr. Drury's handwritten notes, which he recreated from memory after the fact, reflect the following timeline. On September 16, 2014, Mr. Spradley had a "closed, redened [sic] area [on his] hip." Aplt. App., Vol. VI at 117. On September 17, the area was unchanged and measured 2 centimeters by 2 centimeters. On September 18, the reddened area was not described as an open wound, but Mr. Drury noted it did have some serosanguineous drainage.[3] On September 19, the reddened area on Mr.

___

[2] A Foley catheter is a urethral catheter with a retaining balloon. *Foley Catheter*, Stedman's Medical Dictionary 327 (28th ed. 2006).

[3] Serosanguineous drainage from a wound is "an exudate or a discharge of or containing serum and also blood." *Serosanguineous*, Stedman's Medical Dictionary 1754 (28th ed. 2006).

5

Spradley's hip had not worsened, but a reddened area had appeared on his buttocks.

Mr. Drury was off-duty the weekend of September 20-21 and was not present in the

jail.

Mr. Drury was later terminated for falsifying his recreated handwritten records

of Mr. Spradley's treatment. The notes described treatment that Mr. Spradley

received on dates when he was no longer at LCDC. Mr. Spradley contends these

notes are unreliable.

      ii.  <u>The typed notes—Mr. Spradley's version of events</u>

Mr. Spradley relies on typed notes signed by Mr. Drury, *see* Aplt. App., Vol. I

at 134, to support his claim that "the hip and buttock wounds had opened prior to the

16th." Aplt. Br. at 8. The notes state the following regarding Mr. Spradley's wounds

on September 16, 2014:

> Wound to left hip wet to dry dressing, closed area, redened
> [sic] to slight purple coloration
> buttocks, left side red to purple coloration with dark
> looking necrotic area to center of wound, closed, wet to
> dry dressing change as ordered, strict aseptic tech.
> Applied.

Aplt. App., Vol. V at 211. The typed notes contain no entries after September 16 and

do not mention the hip or buttock wounds before that date.

6

### iii.  Hospitalization and surgery

Mr. Spradley testified that when Mr. Drury was off-duty on the weekend of

September 20-21, 2014, LCDC staff did not assist him with cleaning up a bowel

movement, forcing him to lay in feces for at least part of the weekend.

When Mr. Drury returned to the jail on September 22, he observed that the

ulcers had worsened and opened.  Mr. Spradley was taken to the hospital the same

day for ulcers on his hip, heel, and buttocks.  He underwent surgery to treat the

ulcers.

### B.  *Procedural Background*

Mr. Spradley filed a complaint under 42 U.S.C. § 1983 against the LeFlore

County Detention Center Public Trust Board and Mr. Drury in the U.S. District Court

for the Eastern District of Oklahoma.  Aplt. App., Vol. I at 16.[4]  Among other things,

he alleged Mr. Drury's and LCDC's actions amounted to deliberate indifference to

his serious medical needs in violation of his right under the Eighth and Fourteenth

Amendments to be free from cruel and unusual punishment.  He claimed LCDC was

liable for inadequate training and supervision of jail employees, and that it had

engaged in a "pattern or practice"[5] of conduct leading to a violation of his rights.  Mr.

---

[4] Mr. Spradley also sued the jail's administrator, Donnie Edwards.  Mr. Edwards was dismissed from the case on October 12, 2016.  *See* Aplt. App., Vol. I at 191 n.6.  Mr. Spradley does not contest this ruling.

[5] The pattern or practice Mr. Spradley alleged was seeking judicial approval for ill or injured inmates to be released from the jail on "medical own recognizance,"

7

Spradley sought compensatory damages from both defendants and punitive damages from Mr. Drury.[6]

1. **Wound Care Expert Testimony**

Mr. Spradley's wound care expert was Dr. Jeffrey Stone. Dr. Stone's report opined that "Mr. Spradley is a high risk patient and should have been referred to the hospital sooner or at a minimum, received reevaluation by a physician prior to the 22nd of September." Aplt. App., Vol. IV at 99-100. In his deposition, however, Dr. Stone acknowledged "there is room for a reasonable difference of opinion concerning Mr. Drury's action." Aplt. App., Vol. II at 82.

Dr. Stone testified that a "closed reddened area" would not have required sending Mr. Spradley to the hospital or consulting a physician. *Id.* at 108. He explained that, given Mr. Spradley's paralysis and history of bedsores, evidence of developing bedsores, including the reddened area, would have prompted him to check on Mr. Spradley more frequently. *Id.* at 109-10. Dr. Stone said that the onset of serosanguineous drainage would have made him "very concerned" and warranted

---

which, Mr. Spradley contends, left inmates on their own to address their serious medical needs. *See* Aplt. App., Vol. I at 124. The district court's opinion did not address this policy. As discussed below, we resolve the issue of municipal liability on other grounds, and we do not address that policy here.

[6] Mr. Spradley also brought claims under the Americans with Disabilities Act, 42 U.S.C. § 12131, and the Rehabilitation Act, 29 U.S.C. § 794. Aplt. App., Vol. I at 21. He does not address these claims on appeal, and therefore, neither do we. *Krastev v. INS*, 292 F.3d 1268, 1280 (10th Cir. 2002) ("Issues not raised on appeal are deemed to be waived.").

"keeping a close eye" on Mr. Spradley's condition.  *Id.* at 111-12.  He explained that the standard of care called for checking on Mr. Spradley "every four to six hours" and "mak[ing] sure [he was] being turned appropriately."  *Id.* at 112.

In his deposition, Dr. Stone explained that the appearance of reddened areas on Mr. Spradley's buttocks on September 19 was "a sign of deterioration" that should have caused additional concern.  *Id.* at 113.  But when asked whether Mr. Spradley "should have been sent to the hospital on the 19th," or "should have been seen by a doctor on the 19th," Dr. Stone responded, "No.  He should have been looked at significantly more often."  *Id.* at 114.  When asked "if, in fact, [the ulcers] were open," whether Mr. Drury should have escalated Mr. Spradley's care, Dr. Stone stated only that Mr. Drury "should have maybe had the nurse practitioner take a look, maybe had the doctor take a look, been more aggressive with [repositioning]."  Aplt. App., Vol. V at 208-09.

Dr. Stone's report noted that "the credibility of [Mr. Drury's handwritten] nursing notes are in question since they indicate treatment provided to Spradley on days he was not even in custody of the LeFlore County Detention Center."  Aplt. App., Vol. IV at 99.

### 2.  Summary Judgment Ruling

Mr. Drury and LCDC moved for summary judgment.  They argued that Mr. Spradley had failed to establish that either Mr. Drury or any other LCDC employee had violated his constitutional rights.  Mr. Drury also argued he was entitled to

qualified immunity because any right he may have violated was not "clearly

established." *Id.* at 95-96 (quoting *Plumhoff v. Rickard*, 572 U.S. 765, 778 (2014)).

The district court entered summary judgment for the defendants. *Spradley v.

LeFlore Cty. Det. Ctr. Pub. Tr. Bd.*, 2018 WL 2051520, at *1 (E.D. Okla. May 2,

2018). It first concluded that Mr. Spradley's injuries did not satisfy the objective

component of the deliberate indifference inquiry. *Id.* at *6. But even if Mr. Spradley

could show his injuries met the objective component, the court said he had adduced

no evidence of deliberate indifference on Mr. Drury's part. On the contrary, the

record showed Mr. Drury was "attentive to [Mr. Spradley's] bedsores and was

monitoring them daily." *Id.* at *7. Assuming Mr. Drury should have checked on Mr.

Spradley more often than he did, summary judgment for Mr. Drury was still

appropriate because "[n]egligence alone does not amount to a constitutional

violation." *Id.*

Having concluded Mr. Spradley failed to establish that Mr. Drury violated the

Constitution, the district court did not consider the second part of the qualified

immunity analysis—whether any right violated was clearly established. *See id.* at *9.

The court also concluded there was insufficient evidence that Mr. Drury acted with

"malevolent intent or reckless indifference" to support an award of punitive damages.

*Id.*

The district court likewise granted summary judgment to LCDC because Mr.

Spradley failed to establish that (1) any employee committed a constitutional

10

violation to support municipal liability, (2) the LCDC's staff training was deficient, or (3) poor training had caused his injuries.  *Id.* at *10-*11.

Mr. Spradley timely appealed.

## II. **DISCUSSION**

On appeal, Mr. Spradley contends the district court improperly held Mr. Drury's failure to properly treat the worsening bedsores on Mr. Spradley's hips and buttocks did not constitute deliberate indifference.  He argues the district court "relie[d] on [Mr. Drury's] discredited handwritten notes" to reach that conclusion, Aplt. Br. at 15, and asserts that Mr. Drury knew his wounds were "opened" and "necrotic" on September 16, 2014, at least six days before he was ultimately hospitalized.  *Id.* at 8, 15.  In light of this knowledge, he contends Mr. Drury was deliberately indifferent in continuing his course of bedsore treatment rather than hospitalizing Mr. Spradley on September 16.

### A. *Standard of Review*

"We review a district court's grant of summary judgment de novo, applying the same legal standard as the district court."  *Twigg v. Hawker Beechcraft Corp.*, 659 F.3d 987, 997 (10th Cir. 2011).  "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "In applying this standard, we view the evidence and the reasonable inferences to be drawn from the evidence in the light most favorable to the nonmoving party."  *Twigg*, 659 F.3d at

11

997.  "A fact is material if, under the governing law, it could have an effect on the outcome of the lawsuit.  A dispute over a material fact is genuine if a rational jury could find in favor of the nonmoving party on the evidence presented."  *Smothers v. Solvay Chems., Inc.*, 740 F.3d 530, 538 (10th Cir. 2014) (quotations omitted).

B.  ***Legal Background***

1.  **Deliberate Indifference Test**

"A prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate violates the Eighth Amendment."  *Farmer v. Brennan*, 511 U.S. 825, 828 (1994); *Estelle v. Gamble*, 429 U.S. 97, 104 (1976).  When deliberate indifference concerns a pretrial detainee, the Fourteenth Amendment's Due Process Clause provides the constitutional protection.  *See Bell v. Wolfish*, 441 U.S. 520, 537 n.16 (1979) ("Due process requires that a pretrial detainee not be punished.  A sentenced inmate, on the other hand, may be punished, although that punishment may not be 'cruel and unusual' under the Eighth Amendment.").  For Fourteenth Amendment claims, "we apply an analysis identical to that applied in Eighth Amendment cases."  *Lopez v. LeMaster*, 172 F.3d 756, 759 n.2 (10th Cir. 1999).  Under this shared standard, "[d]eliberate indifference has objective and subjective components."  *Callahan v. Poppell*, 471 F.3d 1155, 1159 (10th Cir. 2006).

a.  *Objective component*

The objective component of deliberate indifference is met if the "harm suffered rises to a level 'sufficiently serious' to be cognizable under the Cruel and

Unusual Punishment Clause." *Mata v. Saiz*, 427 F.3d 745, 752-53 (10th Cir. 2005) (quoting *Farmer*, 511 U.S. at 834). It is sufficient to provide evidence that a delay or deprivation of medical care "unnecessarily prolonged appellant's pain and suffering." *Sealock v. Colorado*, 218 F.3d 1205, 1210 n.5 (10th Cir. 2000). "[L]ifelong handicap, permanent loss, or considerable pain" qualify as sufficiently serious harms. *Mata*, 427 F.3d at 751 (quoting *Garrett v. Stratman*, 254 F.3d 946, 950 (10th Cir. 2001)).

In *Mata*, we explained that the objective seriousness of a medical need is evaluated based on the ultimate harm, not "the symptoms presented at the time the prison employee has contact with the prisoner." 427 F.3d at 753. We held that severe chest pain lasting several days and "permanent and irreversible heart damage" were sufficiently serious to avoid summary judgment under the objective component, even though the extent of the inmate's injury was not apparent to the nurse from whom she sought treatment. *Id.* at 754-55.

We have not addressed a claim for inadequate medical care based on an inmate's developing bedsores. Other circuits have observed that bedsores are sufficiently serious to meet the objective prong. *See Green v. McKaskle*, 788 F.2d 1116, 1126 (5th Cir. 1986) ("There is no question that allowing bedridden prisoners to develop bedsores may demonstrate deliberate indifference to the needs of those prisoners."); *see also Schaub v. VonWald*, 638 F.3d 905, 910 (8th Cir. 2011) ("Bed sores are slow-healing and can be fatal if untreated."); *Lawson v. Dallas County*, 286

13

F.3d 257, 262 (5th Cir. 2002) (acknowledging decubitus ulcers can be "serious, even life-threatening"); *Hicks v. Frey*, 992 F.2d 1450, 1452, 1456-57 (6th Cir. 1993) (bedsores were part of illness that was subject to deliberate indifference claim and properly submitted to a jury).

b. *Subjective component*

To satisfy the subjective component, the plaintiff must show the corrections official "knows of and disregards an excessive risk to inmate health or safety." *Farmer*, 511 U.S. at 837. As to knowledge, the official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Self v. Crum*, 439 F.3d 1227, 1231 (10th Cir. 2006) (quotations omitted). "Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence." *Farmer*, 511 U.S. at 842. And "a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Id.*

As to disregard, the plaintiff must demonstrate not only "that the defendants knew he faced a substantial risk of harm," but also that they "disregarded that risk, by failing to take reasonable measures to abate it." *Martinez v. Beggs*, 563 F.3d 1082, 1089 (10th Cir. 2009) (quotations omitted). "[A]ccidental or inadvertent failure to provide adequate medical care, or negligent diagnosis or treatment of a medical condition do not constitute a medical wrong under the Eighth Amendment." *Ramos*

14

*v. Lamm*, 639 F.2d 559, 575 (10th Cir. 1980) (citing *Estelle*, 429 U.S. at 105-06); *see also Whitley v. Albers*, 475 U.S. 312, 319 (1986) (holding Eighth Amendment liability requires "more than ordinary lack of due care for the prisoner's interests or safety").  "Where the necessity for treatment would not be obvious to a lay person, the medical judgment of the physician, even if grossly negligent, is not subject to second-guessing in the guise of an Eighth Amendment claim." *Mata*, 427 F.3d at 751.

For example, in *Duffield v. Jackson*, 545 F.3d 1234, 1236 (10th Cir. 2008), an inmate complained his treatment for back and hip pain and an ear infection was constitutionally inadequate.  He alleged prison staff failed to refer him to an outside specialist for more effective treatment and instead provided "cursory" care. *Id.*  This court affirmed summary judgment for the prison officials, noting there was plentiful evidence that the inmate had received medical attention for his ailments, including lab-work, x-rays, and medications. *Id.* at 1238-39.  The allegation that that treatment was negligent "[did] not constitute a medical wrong under the Eighth Amendment." *Id.* (quotations omitted).

"[A] showing of deliberate refusal to provide medical attention, as opposed to a particular course of treatment, coupled with falsification of medical records . . . is cognizable under 42 U.S.C. § 1983." *Green v. Branson*, 108 F.3d 1296, 1304 (10th Cir. 1997).

15

c. *Gatekeeping function*

We distinguish "a medical professional['s] [] fail[ure] to treat a serious medical condition properly," which does not constitute deliberate indifference, from "prison officials [who] prevent an inmate from receiving treatment or deny him access to medical personnel capable of evaluating the need for treatment," which may constitute deliberate indifference. *Sealock*, 218 F.3d at 1211. In the latter scenario, if the official "knows that his role in a particular medical emergency is solely to serve as a gatekeeper for other medical personnel capable of treating the condition, and if he delays or refuses to fulfill that gatekeeper role due to deliberate indifference, . . . he also may be liable for deliberate indifference from denying access to medical care." *Id.*

C. *Analysis*

The district court properly granted summary judgment on Mr. Spradley's claim of deliberate indifference against Mr. Drury. Even assuming Mr. Spradley's bedsores were sufficiently serious to meet the objective component of deliberate indifference, summary judgment was nonetheless proper. Mr. Spradley presented no evidence Mr. Drury acted with deliberate indifference when he (1) decided to treat the necrotic tissue on Mr. Spradley's hip and buttocks at LCDC, rather than send him to a hospital; (2) provided treatment for Mr. Spradley's bedsores by changing his wound dressings and periodically repositioning him; or (3) fabricated the recreated handwritten notes.

16

On appeal, Mr. Spradley challenges only the grant of summary judgment for

Mr. Drury and acknowledges that whether summary judgment for LCDC was proper

cannot be addressed "unless or until this matter is remanded." Aplt. Br. at 22.[7]

Because we affirm the district court's grant of summary judgment for Mr. Drury, we

do not reach the merits of the claim against LCDC.

1. **Deliberate Indifference**

   a. *Objective component*

Bedsores can support a deliberate indifference claim. *See, e.g.*, *Green*, 788

F.2d at 1126-27. We will assume without deciding that Mr. Spradley's bedsores

were sufficiently serious to satisfy the objective component of deliberate

indifference.[8] We express no view as to whether decubitus ulcers that do not result in

---

[7] The allegation that Mr. Spradley was forced to lay in his own feces for two days over the weekend of September 20-21, 2014, increasing his risk for decubitus ulcers, *see Lawson*, 112 F. Supp. 2d at 620-21 (listing incontinence as a risk factor for decubitus ulcers), is concerning. But this does not save Mr. Spradley's claim of deliberate indifference from summary judgment. Mr. Spradley confines his claim to actions taken by Mr. Drury, who was not on duty on September 20-21. He does not allege that Mr. Drury was responsible for the LCDC employees' alleged failure to perform Mr. Spradley's bowel program or that Mr. Drury was deliberately indifferent based on insufficient training or supervision of his subordinates.

[8] Although it is not necessary to our decision, we question the district court's analysis of the seriousness of Mr. Spradley's injuries. The district court concluded that Mr. Spradley's wounds were not serious enough to satisfy the objective component of his claim when Mr. Drury observed and treated them. It explained, "When the closed, reddened sore appeared on Plaintiff's hip . . . the condition did not warrant sending Plaintiff to the hospital or even calling a doctor, according to Plaintiff's own expert." *Spradley*, 2018 WL 2051520, at *6. Under *Mata*, however,

17

hospitalization and surgery would be sufficiently serious to meet the objective

component.

b. *Subjective component*

Summary judgment was nonetheless proper because Mr. Drury was not

deliberately indifferent to Mr. Spradley's worsening bedsores.  Mr. Spradley does not

dispute that Mr. Drury repeatedly changed dressings and provided other treatment for

his ulcers, which showed Mr. Drury knew they posed some risk to Mr. Spradley's

health.  Mr. Spradley thus needed to establish deliberate indifference by showing that

Mr. Drury "disregarded that risk, by failing to take reasonable measures to abate it."

*Martinez*, 563 F.3d at 1089 (quotations omitted).  A reasonable jury could not

conclude that Mr. Drury deliberately disregarded Mr. Spradley's needs.

In support of his deliberate indifference claim, Mr. Spradley argues Mr. Drury

(1) failed to hospitalize him before September 22, 2014, (2) failed to properly

reposition him to relieve pressure on his bedsores, and (3) fabricated notes regarding

Mr. Spradley's treatment.  We address each of these in turn.

i.  Hospitalization

The parties' factual dispute as to developments with the ulcers arises from the

defendants' reliance on Mr. Drury's recreated notes and Mr. Spradley's reliance on

---

the objective component determination turns on the ultimate harm Mr. Spradley
alleged, rather than on "the symptoms presented at the time." 427 F.3d at 753.

Mr. Drury's typed notes.  On review of summary judgment, we must accept the non-movant's version of the facts.  *See Sprint Nextel Corp. v. Middle Man, Inc.*, 822 F.3d 524, 530 (10th Cir. 2016) (explaining that we must "credit [the non-movant's] evidence and view all reasonable inferences favorably to" the non-movant).  We therefore accept Mr. Spradley's reliance on the typed notes, which showed that his hip wound had a closed, necrotic area on September 16, 2014.  Mr. Spradley provides no evidence, however, to support his contention that "[t]here should have been immediate transport to the hospital" when Mr. Drury discovered the closed, necrotic area.  Aplt. Br. at 15.

Mr. Spradley describes Dr. Stone as having opined that, once the ulcers had become necrotic, "Spradley should have been taken to the hospital."  Aplt. Br. at 14. But he mischaracterizes Dr. Stone's testimony.  When asked whether Mr. Drury should have escalated Mr. Spradley's care had his wound been "*open*," Dr. Stone stated only that Mr. Drury "should have maybe had the nurse practitioner take a look, maybe had the doctor take a look, been more aggressive with [repositioning]."  Aplt. App., Vol. V at 208-09 (emphasis added).  Dr. Stone did not state it was necessary to hospitalize Mr. Spradley for the closed, necrotic wounds.

The only wound that was documented to be open before September 22, the day Mr. Spradley was hospitalized, was the wound on his heel, which is not the source of his deliberate indifference claim.  *See* Aplt. Br. at 5 ("The Plaintiff asserts that it was the failure of provide [sic] treatment to the his [sic] hips and buttocks that caused him

19

to have surgery."). Accordingly, Mr. Drury's decision to treat Mr. Spradley's wounds at LCDC rather than send him to the hospital was not deliberate indifference.

### ii. Mr. Drury's bedsore care

Even accepting Mr. Spradley's testimony that Mr. Drury did not reposition him as often as Dr. Stone would have suggested and instead repositioned him only three or four times during his stay at LCDC, these facts do not establish deliberate indifference. Mr. Spradley does not contest that he was able to reposition himself using his upper body. And Mr. Spradley's claim that staff repositioned him only a few times does not refute Mr. Drury's testimony that he checked on Mr. Spradley several times throughout the day to make sure that he was properly repositioning himself. To the extent Mr. Spradley contends he should have been monitored and repositioned more often, Mr. Drury's failure to do so may have been negligent, but it does not amount to deliberate indifference to Mr. Spradley's needs. *See Sanaah v. Howell*, 384 F. App'x 737, 741 (10th Cir. 2010) (unpublished) (finding no deliberate indifference where defendant cleaned and bandaged a wound and plaintiff had not established that the lack of additional treatment to prevent infection was more than negligent). As Dr. Stone acknowledged, decubitus ulcers can worsen even with good care.

We have found deliberate indifference in cases where jail officials, confronted with serious symptoms, took no appropriate action at all to treat them. In *Sealock*, for example, a jail employee refused to drive an inmate who was experiencing severe

chest pain to the hospital.  218 F.3d at 1210-11.  He instead offered the inmate an

antacid.  *Id.* at 1208.  Although we held that a separate jail official who had

misdiagnosed the source of the inmate's symptoms was entitled to summary

judgment, we explained that the inaction of jail officials who were aware of his

severe chest pain could be deliberate indifference.  *Id.* at 1210-11 (explaining that if

employee was aware of the chest pain, "failure to summon an ambulance would have

disregarded" the serious risk to the inmate's health).  Here, by contrast, Mr. Drury

provided care for Mr. Spradley's bedsores (monitoring and dressing changes) at

various intervals during Mr. Spradley's time at LCDC.  Even if the level of care was

negligent, it did not amount to the disregard that characterizes deliberate

indifference.  *See id.* at 1210-11.

### iii.  Fabricated notes

Mr. Drury's handwritten notes that were recreated from memory and contained

inaccuracies about the dates of Mr. Spradley's treatment do not alone establish

deliberate indifference.  Although falsifying medical records can support an inference

of deliberate indifference, we have allowed for such an inference only in combination

with "deliberate refusal to provide medical attention, as opposed to a particular

course of treatment."  *Green*, 108 F.3d at 1304.  Moreover, as explained above, we

have accepted the facts contained in the typed notes, not the recreated handwritten

notes, as the factual basis for affirming summary judgment.  Mr. Spradley does not

contend that Mr. Drury's typed notes were fabricated. And those notes show that Mr. Drury was not deliberately indifferent to Mr. Spradley's ulcer condition.

c. *Gatekeeping function*

Mr. Drury did not act with deliberate indifference in failing to consult additional medical personnel capable of treating Mr. Spradley's wounds. First, there is no evidence Mr. Drury "kn[ew] that his role . . . [was] solely to serve as a gatekeeper for other medical personnel capable of treating" Mr. Spradley's wounds. *Sealock*, 218 F.3d at 1211. As Mr. Spradley acknowledges, Mr. Drury was principally responsible for providing medical care. Aplt. Br. at 10. And he had experience treating bedsores. Second, insofar as Mr. Spradley argues Mr. Drury failed to exercise his gatekeeper role by not escalating his level of care sooner, he restates his contention that Mr. Drury's care was inadequate because he did not hospitalize Mr. Spradley sooner. As discussed above, there is insufficient evidence to allow a jury to conclude that the deficiencies in Mr. Drury's bedsore care amounted to deliberate indifference.[9]

---

[9] Because we affirm the district court's determination that Mr. Drury did not violate Mr. Spradley's constitutional rights, we do not address whether any right he may have violated was clearly established. *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009) (explaining that a court evaluating qualified immunity is free to "exercise [its] sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand").

2. **Municipal Liability**

To establish a municipality's liability under § 1983, a plaintiff must "prove (1) the entity executed a policy or custom (2) that caused the plaintiff to suffer deprivation of constitutional or other federal rights." *Moss v. Kopp*, 559 F.3d 1155, 1168 (10th Cir. 2009); *see also Monell v. Dept. of Soc. Servs. of N.Y.*, 436 U.S. 658, 690 n.55 (1978) (establishing that local governmental units are "persons" subject to § 1983 liability). Municipal liability predicated on the failure to train officers to conform to the Constitution's requirements also requires a showing that the officers themselves violated the Constitution. *See Zuchel v. City & County of Denver*, 997 F.2d 730, 734-35 (10th Cir. 1993).

On appeal, Mr. Spradley does not address the merits of his municipal liability claim. Instead, he acknowledges that municipal liability can be revisited in the district court only if we reverse and remand its ruling that Mr. Drury did not violate Mr. Spradley's constitutional rights. *See* Aplt. Br. at 22. Because we uphold the district court's determination that Mr. Spradley did not show Mr. Drury committed a constitutional violation, we do not remand for further consideration of the municipal liability claim.

23

## III.   CONCLUSION

For the foregoing reasons, we affirm the district court's judgment.[10]

Entered for the Court

Scott M. Matheson, Jr.
Circuit Judge

---

[10] The district court correctly concluded Mr. Spradley was not eligible for punitive damages.  As discussed above, Mr. Drury's actions did not violate Mr. Spradley's constitutional rights and his claim against LCDC fails.  As a result, Mr. Spradley is not entitled to any damages.  Also, Mr. Drury's actions fall short of the "reckless or callous indifference to [Mr. Spradley's] federally protected rights" required to support punitive damages. *Smith v. Wade*, 461 U.S. 30, 56 (1983).